UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BRUCE A. WHITE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:18-cv-00005-JRS-DLP |
| ) | |
| WARDEN, Wabash Valley Correctional Facility, ) | |
| ) | |
| Respondent. ) | |

**Order Denying Petition for a Writ of Habeas Corpus
and Denying Certificate of Appealability**

Petitioner Bruce A. White seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his murder conviction in Indiana state court case number 20C01-1003-MR-00001. Respondent has filed his return and Mr. White has replied. For the reasons explained below, Mr. White's petition must be denied.

**I. Procedural History**

Bruce White was charged on March 1, 2009, in Elkhart County, Indiana, with murder and felony murder. A jury trial was held December 13-14, 2010, where Mr. White was convicted of both counts. The trial court dismissed the felony murder conviction due to double jeopardy concerns. On January 19, 2011, Mr. White was sentenced to sixty-five years imprisonment in the Indiana Department of Correction.

On direct appeal to the Indiana Court of Appeals, Mr. White raised two issues challenging the sufficiency of the evidence used to rebut his claim of self-defense and the length of his sentence. The appeals court affirmed the conviction and sentence in an unpublished decision on October 13, 2011. *White v. State*, No. 20A03-1101-CR-28 (Ind. Ct. App. Oct. 13, 2011); dkt. 13-6. The Indiana Supreme Court denied a petition to transfer on December 13, 2011. Dkt. 13-9.

Mr. White filed a petition for state post-conviction relief on September 18, 2012. He withdrew the petition on May 9, 2013, and refiled a petition on July 24, 2013. Dkt. 13-10. The trial court held an evidentiary hearing on Mr. White's claims on April 7, 2016. The trial court denied the petition on September 27, 2016. On post-conviction appeal, Mr. White asserted an ineffective assistance of trial counsel claim arguing four acts of deficient performance. Dkt. 13-13. The Indiana Court of Appeals affirmed the trial court's denial of post-conviction relief in an unpublished decision on July 27, 2017. *White v. State*, No. 20A04-1610-PC-2490 (Ind. Ct. App. July 27, 2017); dkt. 13-14. The Indiana Supreme Court denied a petition to transfer on December 19, 2017.

Mr. White filed this habeas corpus action on January 4, 2018.

## II. Habeas Corpus Legal Standard

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id*. (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons – both legal and factual – why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id*. "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id*.

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so

3

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id*. (quoting Richter, 562 U.S. at 103). "The bounds of a reasonable application depend on the nature of the relevant rule. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (en banc) (citation and quotation marks omitted).

### III. Facts of the Case

The Indiana Court of Appeals summarized the facts of the case in its decision in Mr. White's direct appeal and repeated the same summary in its post-conviction appeal decision:

> On the evening of July 25, 2009, White, Charles Farrell ("Farrell"), and an unidentified third man drove to Elkhart[, Indiana,] to purchase two kilo[gram]s of cocaine from [James] for a price of $64,000. The men met Daron Tuggle ("Tuggle") at a convenience store, and then followed Tuggle's vehicle to the Old Farm Apartments. Upon their arrival at the apartment complex, the group found James and Noble Dennie ("Dennie") waiting for them. Tuggle, White, and Farrell got out of their vehicles and joined James and Dennie, and all five men entered an apartment.
>
> Once inside the apartment, James grabbed two packages of cocaine from a table. Farrell asked to look inside the packages, and Tuggle turned toward the kitchen to retrieve something to use to open them. At that time, Tuggle heard White tell James "give it up, Cuz." Tuggle turned back around and saw that White was holding a gun to James's head. Tuggle took a step forward, and Farrell pulled out a gun and pointed it at Tuggle, telling him not to move. James struggled with White, unsuccessfully attempting to disarm him. James then backed away as White continued to point the gun at him. Tuggle then heard a gunshot and James fell to the ground.
>
> Multiple other shots were fired, and Dennie knocked Tuggle to the ground. When the gunfire stopped, Tuggle looked up and saw that only he and James remained in the apartment. Tuggle then got up and went over to check on James, who had been shot in the abdomen, but was still breathing. Tuggle called an ambulance, but James later died from the gunshot wound. A single .45 caliber bullet was recovered during James's autopsy. The police recovered seven .45 caliber shell casings, all of which were fired from one weapon, as well as six 9 [millimeter] shell casings, all of which were fired from one [other] weapon. No gun was seen or found on or near James.
>
> White suffered three gunshot wounds during the shooting, and he later sought treatment at a hospital in South Bend. White told the treating nurse that he was

4

walking near a local restaurant and "minding his own business" when "these guys just came up and shot him." The next morning, after reading about James's death in the newspaper, White fled to Indianapolis, where he stayed at a friend's house . . . . White [later] learned that a warrant had been issued for his arrest, and he fled to Atlanta, Georgia. While in Atlanta, . . . White was arrested, and before being fingerprinted, he admitted to the Atlanta police that he had shot someone and there was a warrant for his arrest in Indiana. Thereafter, White was extradited to Indiana and brought to the Elkhart County Jail.

On March 1, 2010, the State charged White with murder and felony murder. A three-day jury trial commenced on December 13, 2010, at which Tuggle testified for the State. At the conclusion of the evidence, White was found guilty of murder. The trial court held a sentencing hearing on January 6, 2011, and White was sentenced to an executed term of sixty-five years in the Department of Correction.

Dkt. 13-6, pp. 2-4.

### IV. Ground for Habeas Corpus Relief

**A.     Introduction**

Mr. White's habeas petition presents one issue – whether his trial counsel was ineffective. Dkt. 2, p. 7. The claim is divided into five subparts, each contending that a specific event or action was ineffective assistance. These subparts are not separate claims, but individual instances of performance to be considered together in evaluating the single claim of ineffective assistance of counsel. *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005) (holding that "ineffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed. Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief.").

A criminal defendant has a right under the Sixth Amendment to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). For a habeas corpus petitioner to establish that "counsel's assistance was so defective as to require reversal," he must make two showings: (1) that counsel rendered deficient performance that (2) prejudiced him. *Id.* With respect to the performance requirement, "[t]he proper measure of attorney performance remains simply

reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688). "[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 534 (quoting *Strickland*, 466 U.S. at 694).

When the deferential AEDPA standard is applied to a *Strickland* claim, the following calculus emerges:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is . . . difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," [*Strickland*] at 689, 104 S. Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 123. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011).

The Indiana Court of Appeals set out the same *Strickland* standard:

> [8] To prevail on a claim that he has received ineffective assistance of counsel, a defendant must show deficient performance and prejudice. That is, he must show first that counsel's performance fell below an objective standard of professional reasonableness, and second that there is a reasonable probability the outcome of the proceeding would have been different but for counsel's unprofessional errors. Counsel's performance is presumed effective, and all significant decisions are presumed to have been made in the exercise of his reasonable professional judgment. We defer to counsel's broad discretion in making tactical and strategic decisions.

*White v. State*, No. 20A04-1610-PC-2490, unpub. mem. dec., 2017 WL 3185284 (Ind. Ct. App. 2017) (citations omitted).

With this legal framework in mind, the Court turns to Mr. White's arguments.

6

**B.     Trial counsel failed to object to a witness's claim that he had been threatened.**

Daron Tuggle was a participant in the drug deal that led to James's death. He knew the individuals involved, although he had just met Mr. White, and he was present when the shoot out occurred. He testified for the prosecution at Mr. Farrell's trial and at Mr. White's later trial. Mr. Tuggle was in jail at the time of his testimony in both cases. During his testimony in Mr. White's trial, the prosecutor asked Mr. Tuggle on re-direct examination whether he had testified against Mr. Farrell. Mr. Tuggle answered yes, and went on to testify that after his testimony in Mr. Farrell's trial that things became problematic for him in the jail, and that threats had been made against him, his family, and his loved ones. Mr. White's counsel did not object to the testimony, nor did he conduct re-cross examination.

Mr. White argues that his trial counsel's failure to object to Mr. Tuggle's testimony was ineffective assistance of counsel. Dkt. 2, pp. 7-8. In his reply brief, Mr. White correctly recites Indiana law on testimony that a witness has been threatened. Dkt. 15, pp. 19-23. Because such testimony could cause a jury to infer that the defendant was the source of the threat, this type of evidence is generally not allowed in Indiana. *See West v. State*, 755 N.E.2d 173, 182 (Ind. 2001). Mr. White contends that had his trial counsel objected to the testimony, the objection would have been sustained. Dkt. 15, pp. 25-26.

The Indiana Court of Appeals memorandum decision on Mr. White's post-conviction appeal addressed this issue:

> [28] White argues that, had [trial counsel] objected to this testimony as lacking foundation, or had [he] cross-examined Tuggle about it, White might have been spared the inference that he was the one who threatened Tuggle. It is well settled that "threats against potential witnesses [made by the defendant] as attempts to conceal or suppress evidence are admissible as bearing upon [the defendant's] knowledge of guilt." *West v. State*, 755 N.E.2d 173, 182 (Ind. 2001).

[29] True, White might have been spared the inference that he personally threatened Tuggle – but, as [trial counsel] testified at the post-conviction hearing, White might also have been subjected to direct, substantial evidence of it. [Trial counsel] "was concerned that the prosecutor . . . tried to create an inference that Mr. White was somehow . . . connected with the threats, and [he] didn't object because [he] thought that would only reinforce that [inference]." P.C.R. Tr. p. 10. [Trial counsel] did not further cross-examine Tuggle for a similar reason: he "was afraid that something might come out that would implicate Mr. White [in] threatening Mr. Tuggle. . . ." *Id.* at 11.

[30] Whatever collateral inference the prosecutor may have sought to raise, the immediate purpose of her redirect examination was to rehabilitate Tuggle's credibility by showing that he was not, so to speak, "getting off easy" simply by making a deal with the State. This immediate purpose was several inferential steps removed from showing White's knowledge of guilt. It was well within [trial counsel's] reasonable professional judgment not to risk taking those steps on the State's behalf by calling more attention to the threats than necessary.

[31] [Trial counsel] was not ineffective with respect to Tuggle's testimony.

*White*, 2017 WL 3185284.

The Indiana Court of Appeals held that Mr. White's trial counsel had a sound strategy for not objecting to Mr. Tuggle's threat testimony, and thus trial counsel was not ineffective on this point. In other words, the Court of Appeals held that there was no deficient performance of counsel.

Reviewing this portion of the state court record, this Court cannot find that the Court of Appeals' decision was an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the state evidentiary record. *See* 28 U.S.C. § 2254(d). It is a reasonable application of *Strickland* to conclude that trial counsel's decision to not object to the improper evidence because an objection could reinforce the threat testimony and perhaps open the door for more incriminating evidence connecting Mr. White to the threats was a reasonable strategy. "Strategic decisions like these, so long as they are made after a thorough investigation of law and facts, are 'virtually unchallengeable.'" *Blackmon v. Williams,*

8

823 F.3d 1088, 1103 (7th Cir. 2016) (quoting *Strickland*, 466 U.S. at 690). This Court must therefore defer to the state court determination that trial counsel was not ineffective by not objecting to Mr. Tuggle's threat testimony.

### C. Trial counsel failed to seek the removal of a potentially biased juror who became the jury foreman.

Mr. White argues that one of the veniremen in his jury trial, Juror W, admitted that he was well acquainted with both the prosecutor and the trial judge. This juror became the foreman. Mr. White argues that his trial counsel rendered ineffective assistance for not having Juror W removed for cause due to his *implied* bias. Dkt. 2, p. 8.

The Indiana Court of Appeals discussed a criminal defendant's Sixth Amendment right to an impartial jury and the framework and history of addressing claims of juror bias. *White*, ¶¶ 12-13. It acknowledged that a "juror who is impartial and unbiased in the constitutional sense 'is one who is able and willing to lay aside his . . . knowledge and opinions, follow the law as instructed by the trial judge, and render a verdict based solely on the evidence presented in court.'" *Whiting v. State*, 969 N.E.2d 24, 28 (Ind. 2012) (in turn citing *Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961)). The court also acknowledged that "Constitutionally biased jurors must be removed for cause . . . and defense counsel may be found constitutionally ineffective for allowing a constitutionally biased jury to be empaneled." *White*, ¶ 12 (citing *United States v. Lathrop*, 634 F.3d 931, 937-38 (7th Cir. 2011).

Implied bias is assumed, the court noted, where there is a degree of consanguinity (blood relationship), the juror has been victimized by the defendant, or where the juror is employed by the prosecutor's office. *White*, ¶ 13 (citing *United States v. Brazelton*, 557 F.3d 750, 754 (7th Cir. 2009), and *Smith v. Phillips*, 455 U.S. 209, 222 (1982). The question comes down to whether the juror's relationship is "close enough" to assume bias. *Brazelton*, 557 F.3d at 754.

The Indiana Court of Appeals then set out what the record revealed about Juror W:

> • At the outset of jury selection, the court self-deprecatingly noted, "[W.] and I are acquainted. He's been a county employee or working for the Veterans Office for 150 years, and I've worked for the county 150 years or so." Tr. p. 30.2
> • The prosecutor asked W., "Anything about your involvement with county government, with the people in county government, you indicated you knew [the trial judge], that you think might affect your ability to be fair or impartial in this system?" Tr. p. 46. W. answered, "No." *Id.*
> • The prosecutor asked W., "Are you familiar with anyone from the prosecutor's office in a friendly way?" Tr. p. 46. W. answered, "Yes." The prosecutor asked, "Any part of those relationships that might affect your ability to be fair and impartial?" *Id.* W. answered, "No."
> • The prosecutor asked W. whether he was "the type of person that [would] be objective and only hold the state and the defense to whatever standard the law require[d]." Tr. p. 51. W. answered, "Yes." *Id*. The prosecutor asked, "Are you going to want more than what the law requires?" *Id.* at 52. W. answered, "No." *Id*. [Trial counsel] never sought to remove W. for cause or by using one of his ten allotted peremptory challenges. . . .

*White v. State*, 2017 WL 3185284 at ¶ 10 (statute citations omitted).

On this record, the Indiana Court of Appeals found no evidence to support Mr. White's argument that Juror W was biased or that implied bias must be assumed:

> [15] The post-conviction court found "no evidence in the record to support [White's] bald assertion" that W. was actually biased. Neither have we. Other than the bare fact of his "familiar[ity] with [some]one from the prosecutor's office," none of W.'s voir dire responses contained even a whisper of bias against White. W. three times unequivocally affirmed his willingness and ability to render a fair and impartial verdict in accordance with the evidence and the law. That is all the constitution required.

*White v. State*, 2017 WL 3185284 (record citations omitted). It therefore reasoned that because Juror W was not biased, trial counsel's performance was not deficient for failing to seek his removal.

The court also noted that trial counsel's failure to use a peremptory challenge to remove Juror W was not ineffective assistance of counsel. Trial counsel testified at the post-conviction evidentiary hearing that he believed he had used all ten of his challenges and thought the jury with

Juror W on it "was about as good of a composition as we were going to get given the circumstances." *Id.*, ¶ 18. The court found trial counsel "well within the reasonable professional competence required by the Sixth Amendment." *Id.*

Again, this Court cannot find that the Indiana Court of Appeals' decision on juror bias and ineffective assistance was an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the state evidentiary record. *See* 28 U.S.C. § 2254(d). This Court must therefore defer to the state court determination that trial counsel was not ineffective by not attempting to remove Juror W from the jury.

### D. Trial counsel's opening statement contained an assertion that negated Mr. White's theory of defense.

Mr. White argues that his theory of defense heading into jury trial was self-defense. His jury would be instructed that Mr. White found himself in a position of being robbed at gunpoint by Alphonso James and acted in self-defense when he shot and killed James. But trial counsel's opening statement told the jury that Mr. White was at the apartment with Farrell to acquire two kilograms of cocaine when he found himself being robbed at gunpoint.

Trial counsel testified at the post-conviction evidentiary hearing that he erred when making that statement given the law that a person engaged in the commission of a crime is not entitled to invoke self-defense. Mr. White thus argues that trial counsel negated his self-defense claim through his ineffectiveness, because the opening statement conceded that Mr. White did not act in self-defense.

The Indiana Court of Appeals found the record was contrary to Mr. White's claim. It found that the record showed that trial counsel's opening state informed the jury that Mr. White was assisting Farrell in the acquisition of two kilograms of cocaine, and while there, found himself being robbed at gunpoint by James. The court also found that Mr. White's argument necessarily

11

was founded on a belief that, absent trial counsel's admission that Mr. White was involved in a drug deal, the jury would not have known about the drug deal. In rejecting this implied basis, the court held:

> [25] White appears to believe that, but for [trial counsel's opening statement], the jury would have never heard anything at all about cocaine. This is nothing more than wishful thinking. White was never going to have a trial at which his presence in James's apartment went unexplained. It was the theme and theory of the State's case from its opening statement . . . ("Ladies and gentlemen, Alphonso James was killed during a drug deal."), through its closing argument. ("[White was] [t]he man who set everything into motion with the weapon and the violence, the man who's been dealing drugs, the man who went to get possession of drugs, the man . . . who tried to rob Alphonso James during a drug deal."). [Trial counsel] could not have kept it out of evidence, because it was central to a rebuttal of White's self-defense claim, and any minimally competent prosecutor would have been expected to raise it as such.

*White*, 2017 WL 3185284 (record citations omitted).

The court further noted that Mr. White's self-defense claim was presented to the jury. The jury instructions provided that:

> Because a defendant is committing a crime at the time he is allegedly defending himself is not sufficient standing alone to deprive the defendant . . . of the defense of self-defense. Rather, there must be an immediate causal connection between the crime and the confrontation.
>
> A person who was actively engaged in the perpetration of a crime may assert self-defense if the criminal activity he engaged in did not produce the confrontation wherein force was employed.

*Id.*

The Indiana Court of Appeals found that trial counsel was not ineffective in this regard. Because Indiana law allowed Mr. White to assert self-defense even when he was committing another crime, trial counsel could speak to the fact that Mr. White and others were conducting a drug deal. The court also noted that the prosecution's immediately preceding opening statement had told the jury the entire incident was a drug deal. *Id.*, ¶ 25.

12

This Court must again give deference to the state court's decision. The decision is not contrary to, and is not an unreasonable application of, clearly defined federal law. It is not based on an unreasonable determination of the facts. Trial counsel's strategy of admitting to the jury in opening statement that Mr. White was involved in a drug deal, an admission that acknowledged what the prosecution was going to present, was not deficient performance. Mr. White's self-defense strategy was not eviscerated and the jury was instructed on the defense.

Mr. White's claim on this point is without merit.

### E. Trial counsel's failure to object to an improper statement in the prosecutor's closing argument was ineffective assistance of counsel.

Mr. White next contends his trial counsel was ineffective when he did not object to a statement made by the prosecutor during her closing argument:

> [White's exculpatory testimony as to the men's relative positions in James's apartment before the shooting] just makes absolutely no sense. Now, why is Bruce White trying to explain it like that? Because he's had the benefit, ladies and gentlemen, of sitting through the evidence as we all have to explain why the bullet had that certain trajectory.

*White*, 2017 WL 3185284, ¶ 32 (text alteration in original).

Mr. White argues that this argument was improper because it violated his Sixth Amendment right to be present at his trial, and therefore trial counsel was ineffective for not objecting to the statement. His argument depends on his assertion that the prosecution's closing argument was improper and that an objection to the statement would have been sustained.

The Indiana Court of Appeals quickly dispatched this claim by observing that "Comment[ing] on a testifying defendant's opportunity to tailor his testimony is constitutionally permitted, and the trial court could not have sustained an objection to the prosecutor's comment here." *Id.*, ¶ 33. The court applied *Portuondo v. Agard*, 529 U.S. 61, 69 (2000), which holds that "[W]hen a defendant takes the stand, his credibility may be impeached and his testimony assailed

13

like that of any other witness. . . . [T]he rules that generally apply to other witnesses – rules that serve the truth-seeking function of the trial – are generally applicable to him as well." *Id.* (quotations and citations omitted). The court held that trial counsel was not ineffective on this point.

The Court of Appeals decision is not contrary to or an unreasonable application of *Portundo*, and there is no unreasonable determination of the facts. *Portuondo* allows exactly this type of argument, thus the trial court would not have sustained an objection to it. Trial counsel was not ineffective and Mr. White's claim is without merit.

### F. Trial counsel rendered ineffective assistance of counsel with regard to a jury instruction on voluntary manslaughter.

Mr. White's last argument that trial counsel was ineffective concerns his handling of a jury instruction on voluntary manslaughter. At the start of the trial, trial counsel's proposed instructions included a proposed instruction on voluntary manslaughter. After the evidence closed and the parties met with the trial judge to finalize jury instructions, trial counsel agreed with the trial judge and prosecutor that there was no evidence of sudden heat. Thus the trial court did not give that instruction to the jury. Mr. White argues that trial counsel was ineffective for "not demanding" the instruction be given, or for not making a record for appeal on the issue. Dkt. 2, pp. 9-10. Most of his briefing on this issue argues that there was evidence to support the instruction. This Court's review does not address that question, but is limited to assessing whether the Indiana Court of Appeals' decision on this issue (whether trial counsel was ineffective) was contrary to or an unreasonable application of federal law. 28 U.S.C. § 2254(d).

The respondent acknowledges that in Indiana voluntary manslaughter is a lesser included offense of murder. It is proved with all of the elements of murder plus the added mitigating evidence of "sudden heat." *See Champlain v. State*, 681 N.E.2d 696, 701-02 (Ind. 1997).

Trial counsel testified at the post-conviction evidentiary hearing that there was no evidence of sudden heat, as that concept is defined in Indiana, and therefore it was not necessary to preserve the issue for appeal. Indiana defines sudden heat as "sufficient provocation to excite in the mind of the defendant such emotions as anger, rage, sudden resentment, or terror, . . . or excited emotions . . . sufficient to obscure the reason of an ordinary man." *Champlain v. State*, 681 N.E.2d 696, 702 (Ind. 1997). Sudden heat "prevent[s] deliberation, exclud[es] malice, and render[s] a person incapable of cool reflection." *Dearman v. State*, 743 N.E.2d 757, 761 (Ind. 2001).

He also testified that he had an "all or nothing" strategy about the defense and instructions. *White*, 2017 WL 3185284, ¶ 38. The court quoted trial counsel's testimony on this issue:

> I think a large part of that was, you know, I was of the opinion that I was presenting an all or nothing defense; and, you know, some of the other instructions[, particularly as to self-defense,] would have been contradictory and, you know . . . .[tended] to establish a basis . . . for a compromise [ ] verdict. . . . [F]rom a lawyer's standpoint, when lawyers present contradictory arguments, then jurors give[ ] the lawyers less credibility in terms of their presentation, and that . . . tends to have an impact on the client's position.

*Id.*

In 2008 the Indiana Supreme Court wrote on these points:

> [A] voluntary manslaughter instruction in the absence of evidence of sudden heat can prejudice a defendant. One legitimate trial strategy for the defendant in a murder trial is an "all-or-nothing" one in which the defendant seeks acquittal while realizing that the jury might instead convict of murder. In a situation where a jury must choose between a murder conviction and an acquittal, the defendant might well be acquitted. But if the jury has voluntary manslaughter as an intermediate option, the defendant might be convicted of voluntary manslaughter as a "compromise." Such a verdict is inappropriate if unsupported by any evidence of sudden heat; moreover, an unsupported voluntary manslaughter instruction deprives the defendant of the opportunity to pursue a legitimate trial strategy.

*Watts v. State*, 885 N.E.2d 1228, 1233 (Ind. 2008). The Indiana Supreme Court also held that in the absence of evidence of sudden heat, it is error for a trial court to give a voluntary manslaughter

instruction. *Id.*, 885 N.E.2d at 1232.

The Court of Appeals also addressed Mr. White's contention that there was sufficient evidence to require a voluntary manslaughter instruction to be given:

> [40] The portions of his own testimony White quotes here as creating a serious evidentiary dispute over sudden heat do no such thing. White testified that James pressed a gun to his side and that White then "kind of panicked . . . like, jumped. . . . [I]t was more or less because of how hard he poked me with the gun. It kind of like hurted me like being touched with something cold to make me jump. . . ." White tried to shake James off and then the shooting started. White took cover for "13 to 15 seconds" before he "went to retrieve [his] gun" from his pants pocket and returned fire. In other words, White testified that he was startled and then took reasonable measures to defend himself. He did not testify that sudden rage or terror obscured his reason and rendered him incapable of cool reflection. Had the issue been presented to us on direct appeal, we could not have found that refusing White's tendered voluntary manslaughter instruction was an abuse of the trial court's discretion. Thus, White was not prejudiced by [trial counsel's] failure to object to the trial court's proposed final instructions.

*White,* 2017 WL 3185284 (record citations deleted).

Applying *Watts* in light of its review of the evidence, and considering trial counsel's testimony, the Court of Appeals held that "[i]t was not deficient for [trial counsel] to conclude that a voluntary manslaughter instruction legally and rhetorically undermined White's best chance for acquittal." *White*, 2017 WL 3185284, ¶ 38.

The court also found that the failure to preserve the issue for appeal did not prejudice Mr. White. *Id.*, ¶ 39. The court found that "the post-conviction court – and presumably the trial court – found no 'cognizable evidence of sudden heat. [White's] bald assertion that he acted in sudden heat just after the drug transaction . . . is not supported by the evidence presented at trial.'" *Id.* (record citation omitted). Had Mr. White presented a direct appeal issue that the trial court erred by not giving a voluntary manslaughter instruction, the Court of Appeals held that it would not have found the trial court abused its discretion. Therefore, the court held, Mr. White had failed to show prejudice and thus trial counsel was not ineffective. *Id.*, ¶¶ 40-41.

The Court of Appeals' holding on the instruction issue rests on state law, and it found no error. When reviewing an ineffective assistance of counsel claim raised in a § 2254 petition, "[a] federal court cannot disagree with a state court's resolution of an issue of state law." *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016). But the court also held Mr. White had not suffered prejudice. That finding, one of *Strickland*'s two prongs, is not contrary to or an unreasonable application of federal law, and there is no unreasonable determination of the facts. Trial counsel pursued a time-honored "all or nothing" approach to the jury instructions, which is a strategic decision. Thus there is no deficient performance. Trial counsel was not ineffective and Mr. White's claim is without merit.

## V. Conclusion

Finding no instances of deficient performance, the Court nevertheless assesses the cumulative effect of the alleged instances of deficient performance, and finds no ineffective assistance of counsel. Trial counsel was not ineffective under the standard explained in *Strickland*. Mr. White's petition for a writ of habeas corpus is therefore **denied**.

## VI. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.'" 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists

could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Mr. White's five instances of trial counsel's performance do not meet the *Strickland* tests for ineffective assistance of counsel. Jurists of reason would not disagree with this Court's resolution of his claims and nothing about the claims deserve encouragement to proceed further. Therefore, a certificate of appealability is denied.

**IT IS SO ORDERED**.

Date: 5/13/2019

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Bruce A. White
104961
Wabash Valley Correctional Facility - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Chandra Hein
INDIANA ATTORNEY GENERAL
302 West Washington Street
Indiana Government Center South, Fifth Floor
Indianapolis, IN 46204